## Bank of Hanover & Trust Company v. Oxford Wood Products, Inc.

*John W. Phillips*, for plaintiff.

*Daniel E. Teeter*, for defendants.

MacPHAIL, P. J., May 3, 1974.—

## DECISION

And now, May 3, 1974, after a nonjury trial held March 25, 1974, the court makes the following:

## FINDINGS OF FACT

1. Defendants, Clyde O. and Dolores H. Garber (hereinafter called "Garbers"), executed a written lease agreement with Oxford Wood Products, Inc. (hereinafter referred to as "OWP"), on May 1, 1968, by the terms of which OWP occupied the premises owned by Garbers for manufacturing purposes.

2. OWP is in default of the lease rentals due under the provisions of the law from August 1, 1969, to November 3, 1970, for an aggregate sum of $4,500.

3. In October of 1969, the shareholders of OWP had a meeting at which the sale of the shares of stock of OWP was discussed. The shareholders present at the meeting decided to sell all of their shares of stock to Franklin Leinart and others. Pursuant to

that decision, the shareholders delivered their shares of stock to plaintiff as escrow agent.

4. At the same meeting in October of 1969, the officers and directors of OWP resigned, including defendant, Clyde O. Garber, who was president of OWP.

5. At the time of the shareholders' meeting, OWP was a closely held corporation consisting of less than ten shareholders.

6. Between October of 1969, and February 21, 1970, the business of OWP was operated by persons other than the shareholders, officers and directors who met and resigned in October of 1969, although no consideration was ever paid by the prospective purchasers to the owners of the shares of stock.

7. Garbers instituted distraint proceedings against OWP on February 21, 1970, claiming the sum of $2,200 due and owing in unpaid rent as of that date.

8. Service of that distraint proceeding was had upon the plant superintendent who was not a shareholder, director or officer of OWP. In addition, notices were posted at the plant.

9. An appraisal of the property was made as required by law but there was never a distraint sale.

10. Between February 21, 1970, and November 3, 1970, the shareholders, officers and directors who were present at the meeting in October 1969, met several times thereafter to determine what action should be taken, both with respect to the distraint proceeding and the unconsummated sale of stock.

11. On November 3, 1970, at the suggestion of their counsel, Garbers again distrained on the same property of OWP, it being the opinion of their counsel that the first proceeding might be invalid because of the manner in which notice of the distraint was served.

12. The distraint of November 3, 1970, was for the amount of $4,500, which included the $2,200 for which distraint was had on February 21, 1970.

13. There was no distraint sale with respect to the property distrained upon on November 3, 1970.

14. OWP executed a security agreement with plaintiff on September 23, 1968, as collateral for a promissory note given by OWP to plaintiff to obtain a loan.

15. By the terms of the said security agreement, plaintiff obtained and retained a security interest in the items of personal property set forth in Schedule D attached to plaintiff's complaint.

16. Plaintiff did not give notice to Garbers of the security interest it claimed in the machinery, equipment and inventory of OWP as required by law, nor did Garbers waive their right to their lien as landlords of OWP.

17. The value of the personal property replevied and sold by plaintiff in the within action, pursuant to the terms of the security agreement, does not exceed the balance due and owing to plaintiff by OWP as of the date the within action was instituted.

## DISCUSSION

This was the second nonjury trial of the within matter. At the first trial, we entered a verdict in favor of plaintiff on condition that plaintiff pay the Garbers the sum of $4,500. Plaintiff filed exceptions to our findings and we awarded a new trial because it had developed at the first trial that, in fact, two distraint proceedings had occurred with respect to the property of OWP, although only one such distraint was mentioned and admitted in the pleadings. Plaintiff attacked the successive distraints as being

illegal. Garbers contended that the illegality of the distraint proceedings had not been raised until after the evidence was closed at trial, thus barring Garbers from showing that the second distraint was lawful notwithstanding plaintiff's objections thereto. To resolve that issue, we awarded a new trial.

Our decision now rests upon the narrow question of whether the Garbers had justifiable cause to abandon the first distraint proceeding. The present statutory authority for distraint proceedings is set forth in the Act of April 6, 1951, P. L. 69, as amended, 68 PS §250.302, et seq. It must be noted at the outset that Gross v. Fox, 349 F. Supp. 1164 (E.D. Pa., 1972), has declared sections 302, et seq. of the Act of 1951, dealing with distraint proceedings, to be *facially* unconstitutional because it is in violation of the provisions of the Fourteenth Amendment of the Federal Constitution. In Stots v. Media Real Estate Co., 355 F. Supp. 240 (1973), the Federal District Court, citing Gross v. Fox, entered an order declaring that section 302, et seq. of the Act of 1951, supra, was unconstitutional on its face, invalid and void.

While it may be unnecessary to do so, we would point out that although the distraint proceedings in this case were instituted in 1970, prior to Gross v. Fox, nevertheless, since neither distraint proceeding has been consummated, the decision in Gross v. Fox would be binding upon us here.

Moreover, there is no persuasive evidence that the second distraint in the within matter was regular. Presumptively, the abandonment of a distress by a landlord is a satisfaction of the rent: Bernstein v. Colletris, 99 Pa. Superior Ct. 484 (1930). The Bernstein case states, at page 487, that the presumption "may be rebutted by showing that the writ has not been prosecuted by request of the tenant or the owner

of the goods." Here, the owner of the goods was OWP. Defendant, Clyde Garber, testified at the trial that after October 18, 1969, *he* considered the proposed purchasers of the company stock as the owners of the company and admitted that he had no discussions with those people between February 21, 1970, and November 3, 1970, the dates upon which the two distraint proceedings were instituted. It thus appears from Garber's own testimony that consummation of the first distress was not withheld at the behest of the tenant or owner of the goods.

At the second trial, Garber also said the second distraint was initiated at the suggestion of his counsel because it was felt that the first distraint might have been infirm for lack of proper notice. A comparable issue was presented in Pfeiffer v. Schubmehl, 7 Delaware 575 (1900). There, the landlord was of the opinion that the first distraint might be invalid because the appraisement was not timely made. The court addressed itself to that narrow issue and held that the initial distraint can be abandoned without prejudice and a new proceeding instituted *only* where there was insufficient property to satisfy the first distress on the premises or where a mistake had been made in evaluation of the property. "After making one sufficient distress, the landlord is bound to proceed to the end," said the court, at page 577. Sufficient authority for this conclusion arises from Quinn v. Wallace, 6 Wharton 452 (1841). Obviously, neither of the exceptions mentioned in the Pfeiffer case, .supra, were present in the case now before us. Thus, it appears that mere lack of compliance with technical provisions of the Act in the first distraint proceeding is insufficient to rehabilitate an otherwise invalid second distraint.

From the foregoing, we must conclude that the

Garbers have failed to meet their burden of proof to show justification for the second distraint proeeeding.

## CONCLUSIONS OF LAW

1. The distraint of February 21, 1970, was abandoned when the second proceeding was instituted.

2. The distraint of November 3, 1970, was illegal because of the unjustified abandonment of the distraint of February 21, 1970.

3. Both distraint proceedings are illegal because of the facial unconstitutionality of the statutory authority under which the proceedings were instituted.

4. Notwithstanding defendants' right to a landlord lien for unpaid rent, such right being unperfected, plaintiff had a valid security interest in the items of personal property set forth in Exhibit D of the complaint which rendered such items subject to sale in the event of the default of OWP with respect to its obligations under the terms of the security agreement.

## VERDICT

And now, May 3, 1974, the court finds in favor of plaintiff.